UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| GLYNN COUNTY, GEORGIA, by and through the GLYNN COUNTY BOARD OF COMMISSIONERS,<br>     Plaintiff,<br><br>vs.<br><br>GL NV24 Shipping Inc.,<br>Hyundai Glovis Co.,<br>G-Marine Service Co., Ltd,<br>Norton Lilly International,<br>T&T Salvage LLC<br><br>     Defendants. | Case No.  **CV222-028** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff, GLYNN COUNTY, by and through undersigned counsel, and files its Complaint against the above-named Defendants and alleges as follows:

**NATURE OF THE ACTION**

1. At approximately 1:40 a.m. on September 8, 2019, the *M/V Golden Ray* ("*Golden Ray*"), a 656 foot long, two-year-old car and truck carrier managed by Hyundai Glovis Co., capsized at St. Simons Sound, making it the largest shipwreck in the coastal United States since the Exxon Valdez in 1989.

2. At that time, the *Golden Ray* was carrying approximately 4,300 vehicles and had 300,000 gallons of heavy bunker fuel in 24 tanks on board. Leaking fuel polluted St. Simon Sound, south to Jekyll Island, north to parts of St. Simon Island, and up the Mackay River and marshes, east up East and South Brunswick Rivers and marshes, and surrounding the southern end of Blythe Island and its marchlands.

3. Salvage operations of the wreck that began in 2019 to cut and haul away the vessel in eight sections have caused numerous separate oil spills and fires. One during the first week of July 2021 prompted health officials to issue warnings to would be swimmers and fishers and resulted in additional damage to the Sound and the surrounding coastal environment. Another, the most severe and extensive to date, began leaking oil on July 31, 2021, and was not capped until August 8, 2021.

4. This Complaint states claims under the Federal Oil Pollution Act of 1990, 33 U.S.C. § 2792, negligence under general maritime law, Georgia statutory law, and Georgia common law claims of trespass, public nuisance, private nuisance, and strict liability for ultrahazardous activity.

## PARTIES

5. Plaintiff Glynn County, by and through the Glynn County Board of Commissioners, is the governing body of Glynn County, Georgia, and is a political subdivision of the State of Georgia. Glynn County brings this action to protect and enforce the rights, interests, and duties of the County government of Glynn County and as trustee of the citizens and taxpayers of Glynn County.

6. Defendant GL NV24 Shipping, Inc., owner of the *Golden Ray*, is organized under the laws of the Republic of South Korea and is doing business in Georgia and throughout the United States transporting Hyundai Motor, Kia Motors and other vehicles.

7. Defendant Hyundai Glovis Co., manager of the *Golden Ray*, is organized under the laws of the Republic of South Korea and is doing business in Georgia and throughout the United States transporting Hyundai Motor, Kia Motors, and other vehicles. Hyundai Glovis Co. has a North American trade team that reviews cargo and talks to customers about what cargo is available

and what will be loaded and has a local vessel operator who works with the *Golden Ray* throughout the United States.

8. Defendant G-Marine Service Co., Ltd. is organized under the laws of the Republic of South Korea and is doing business in Georgia and throughout the United States. G-Marine Service Co., Ltd., is the operator and technical superintendent that managed the crew of the *Golden Ray* and maintained responsibility for the safety management system on the *Golden Ray*.

9. Defendant Norton Lilly International is organized in Alabama with its principal place of business at One St. Louis Center, Suite 5000, Mobile, Alabama, 36602. Norton Lilly International conducted business in Georgia as the *Golden Ray's* agent in the Port of Brunswick.

10. Defendant T&T Salvage LLC is organized in Texas with its principal place of business at 8717 Humble Westfield, Humble, TX 77338. T&T Salvage LLC is conducting the wreck removal of the *Golden Ray* from St. Simons Sound in Brunswick, Georgia.

## JURISDICTION AND VENUE

11. Jurisdiction in this Court arises under the Federal Oil Pollution Act of 1990, 33 U.S.C § 2710 *et seq*., general maritime law and various state law claims. This Court has jurisdiction over the federal law claims pursuant to 33 U.S.C. § 2717(c) and pursuant to 28 U.S.C. § 1331. In addition, this Court has supplemental jurisdiction over the state law claims as they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all of the events, actions, and/or omissions giving rise to the County's claims occurred in this district and because the properties that are the subject of the Complaint are located within this judicial district.

## OIL POLLUTION ACT PRESENTMENT OF CLAIMS

13. On June 4, 2021, Plaintiff presented their claims to the designated representative of the responsible party, GLNV24 Shipping, Inc., under 33. U.S.C. § 2713(a).

14. More than 90 days have passed, and Defendants have denied and/or not paid the claims.

15. Therefore, Plaintiff has complied with and/or satisfied all conditions precedent prior to filing these claims.

## FACTUAL ALLEGATIONS

### A. The *Golden Ray* Shipwreck and Oil Spill Occurred in the Second Largest Coastal Marshland in the United States.

16. The *Golden Ray* departed out of the Port of Brunswick, Colonel Island, Georgia, on the South Brunswick River a little after 1 a.m. and was headed out through St. Simons Sound on September 8, 2019, on its way to Baltimore. Thereafter, it was destined for the Middle East.

17. Hurricane Dorian had passed just days before and the United States Army Corp of Engineers (USACE) and the National Oceanic and Atmospheric Administration (NOAA) had finished thoroughly scanning the shipping channel--Brunswick Point Cut Range, Cedar Hammock Range and Widener 11, the triangular section of the Sound where vessels take a starboard turn to Plantation Creek Range to head out to open waters. They found that Dorian had no impact and that ships were clear to go underway.

18. State of Georgia Pilot Captain Johnathan Tennant was at the helm to pilot it out of the Sound, just as he had for the *Golden Ray's* inbound passage to the Port of Brunswick.

19. "Cupcake conditions" – light south wind, calm, good visibility, bright, were described by Captain Tennant, who had by his side the Master of the *Golden Ray*, Captain Gi Hak Lee, employed by G-Marine Service, and who had first reported on board the *Golden Ray* in Freeport, Texas, on August 28, 2019.

4

20. Proceeding outbound, Captain Tennant made the turn starboard at Widener 11, headed right and east out of St. Simon's Sound.

21. At that time, the vessel became unstable and listed starboard. Despite last minute efforts to alter the course of events by the Captain, the *Golden Ray* would not be righted and instead continued to spin starboard.

22. Upon information and belief, Captain Tennant called for help and was focused on keeping the ship away from inbound vessel *Emerald Ace* and toward a sandbar, avoiding shipwreck beyond the Sound in deeper water.

23. The *Golden Ray* came down portside on the edge of the Sound, just northeast of Jekyll Island. It capsized with the starboard side well out of the water, facing the sky.

24. Fuel oil immediately began to leak out of the vessel.

25. Fires broke out.

26. Evacuation and rescue operations began in earnest and all twenty-three persons on board were eventually rescued.

27. On September 23, 2019, the United States Coast Guard reported that oil was leaking from the hull of the ship, characterizing the leaks as "sporadic discharges" and noting that oil was being spotted in nearby shorelines, rivers and marshes.

28. On October 1, 2019, another discharge of fuel was reported, followed by a report from the Jekyll Island Authority that oil was observed on Jekyll Island beaches and nearshore waters.

29. The United States Coast Guard ("USGC") and the National Transportation Safety Board ("NTSB") conducted an investigation and hearing on the capsizing of the *Golden Ray* and made a determination that the vessel was not in compliance with the 2008 Intact Stability Code

because the vessel had too much cargo at a high center of gravity, a situation that could have been corrected by ballasting.

30.     The USGC and the NTSB also made a determination that the vessel had been out of compliance with the 2008 Intact Stability Code during the two prior port stops.

31.     Upon completion of its investigation, the USCG and NTSB concluded that the vessel was loaded in such that it had too many vehicles placed at a high center of gravity, top-heavy, and had been in danger of capsizing since its loading in Freeport, Texas.

**B.   The Salvage Operation Caused Multiple Fires and On-Going Oil Spills.**

32.     The *Golden Ray* was grounded in close proximity to environmentally sensitive areas that serve as a unique habitat for a variety of species, including shrimp and migratory birds; the coastal environment is the main attraction of tourism to the area.

33.     After the capsizing and rescue, approximately 320,000 gallons of fuel, mixed with water, were pumped out by December 12, 2019, and approximately 44,000 gallons of petroleum products, hazardous substances, and 4,200 cars remained.

34.     On December 17, 2019, T&T Salvage LLC ("T&T") submitted a proposal to GL NV24 Shipping, Inc. to perform a large-section demolition of the *Golden Ray* wreck.

35.     GL NV24 Shipping, Inc. accepted the proposal and made the determination that large-section demolition would be the safest and environmentally sound method for removing the *Golden Ray* wreck.

36.     In January 2020, Defendant T&T took over responsibility for the wreck removal of the *Golden Ray* from St. Simons Sound from Donjon-Smit, LLC, a company that was initially hired to perform the removal.

37. T&T's Wreck Removal Plan set out to mechanically cut the vessel with chain or tungsten cutting wire into eight (8) large sections, each expected to weigh between 2,700 to 4,100 tons, to then be lifted onto barges for disposal using a floating crane.

38. T&T's Wreck Removal Plan included the placement of an Environmental Protection Barrier ("EPB") that was intended to contain pollutants from the vessel and mitigate the effects of potential discharges.

39. T&T's Wreck Removal Plan indicated that the limited number of large cuts would reduce the potential of inaccessible and up-pumpable hydrocarbons and other pollutants from impacting the waters surrounding the wreck removal site, and the EPB would provide a protective barrier along the seabed, throughout the water column and at the surface level allowing for the retention and recovery of debris and other pollutants.

40. T&T characterized the potential for spills to be minor and controllable.

41. By January 19, 2020, an additional fire broke out on the vessel.

42. The EPB was not in place until June 1st, 2020.

43. After multiple delays, the cutting and lifting operations for the first section finally began on November 6, 2020. Within two (2) days the cutting chain broke.

44. Repeated fires causing discharges of debris and hazardous fluids have occurred throughout the duration of wreck removal.

45. Several substantial oil leaks from the wreck have made it past the EPB, allowing oil to infiltrate the coastal wetlands, marshlands, estuaries and beaches, including those notably occurring on June 1st, July 1st, and July 31st, 2021.

46. Salvage operations were completed in October 2021.

# COUNT I
# STRICT LIABILITY UNDER THE OIL POLLUTION ACT OF 1990, 33 U.S.C. § 2702
## (AGAINST GL NV24 SHIPPING INC. AND HYUNDAI GLOVIS CO.)

47. Glynn County incorporates paragraphs 1 through 46 as through fully set forth herein.

48. The Federal Oil Pollution Act of 1990 ("OPA") provides that "each responsible party for . . . a facility for which oil is discharged . . . into or upon the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages . . . that result from such incident." 33. U.S.C. § 2702(a).

49. An incident is "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil . . ." 33 U.S.C. § 27001(14).

50. Recoverable damages include damages for natural resources, real or personal property, subsistence use, revenues, profits and earning capacity, and public services. 33 U.S.C. § 2702(b)(2).

51. On September 8, 2019, and multiple occasions thereafter, Defendants discharged or leaked heavy fuel oil and other hazardous substances into St. Simons Sound and are therefore strictly liable under OPA as a responsible party for recoverable damages.

52. As a result of the oil spills, the County has not been able to use natural resources, such as the marshes, rivers, beaches, estuaries, parks, fish, shrimp, crab, water and potentially other areas and spaces, that have become contaminated by the spilled oil, and the County is entitled to recover from Defendants for such damages and loss of use. 33 U.S.C. § 2702(b)(2)(C).

53. As a result of the oil spill, the County is entitled to damages pursuant to Section 2702(b)(2)(B), which provides for recovery of damages to real or personal property, including

"[d]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property, including the diminution of the value of their property."

54. As a result of the oil spill, the County is entitled to damages pursuant to Section 2702(b)(2)(C), which provides for recovery for "[d]amages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

55. The contamination caused by the discharge of oil resulted in natural resource damages to marshlands, estuaries, beaches, rivers, and parks, contaminating fish, shrimp, crab and bird habitats and injuring the County.

56. As a result of the oil spill, the County is entitled to damages pursuant to Section 2702(b)(2)(D), which provides for recovery of damages for loss of revenue "[d]amages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources."

57. As a result of the oil spill, the County is entitled to damages pursuant to Section 2702(b)(2)(E), which provides for recovery for "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

58. As a result of the oil spill, the County is entitled to damages pursuant to Section 2702(b)(2)(F), which provides for recovery of damages for the costs of providing public services including "[d]amages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by the discharge of oil."

9

59. As set forth above, Defendants are strictly liable to the County under OPA in an amount to be determined at trial.

**COUNT II**
**DAMAGES UNDER THE GEORGIA CODE § 12-5-501, ET SEQ.**
**(AGAINST GL NV24 SHIPPING INC., HYUNDAI GLOVIS CO., G-MARINE SERVICE CO., LTD, NORTON LILLY, and T&T SALVAGE LLC)**

60. Glynn County incorporates paragraphs 1 through 46 as though fully set forth herein.

61. Defendants are responsible parties as defined by Section GA Code § 12-5-500 (8).

62. From the initial oil spill on September 8, 2019, and to the discharges thereafter, Defendants GL NV24 Shipping Inc., Hyundai Glovis Co., G-Marine Service Co., Ltd, and Norton Lilly, through their acts and omissions as fully set forth herein, caused the discharge or leaking of oil and other hazardous substances into St. Simons Sound.

63. As a result of these discharges, the County has incurred and will continue to incur costs associated with the removal of oil and other substances and damages to its marshes, rivers, beaches, estuaries, parks, fish, shrimp, crab, water and potentially other areas and spaces that have become contaminated by the discharges and the County is entitled to recover from Defendants for such damages and loss of use. GA Code § 12-5-501.

64. Despite the installation of a barrier to contain the oil and other fluids, Defendant T&T Salvage LLC caused the discharge or leaking of additional oil and other toxic and hazardous substances from the *Golden Ray* into St. Simons Sound, outside of the barrier, causing further damages to natural resources, such as marshland and estuaries, further contaminating fish, shrimp, crab, bird and other wildlife habitats.

65. As set forth above, the ship capsizing and resultant initial oil spill, and the subsequent and repeated discharges of fuel oil and other substances, each Defendant is liable to Glynn County in an amount to be determined at trial.

## COUNT III
## NEGLIGENCE UNDER FEDERAL MARITIME LAW
**(AGAINST GL NV24 SHIPPING INC., HYUNDAI GLOVIS CO., G-MARINE SERVICE CO., LTD, AND NORTON LILLY)**

66. Glynn County incorporates the allegations in paragraphs 1 through 46 above as though fully set forth therein.

67. Plaintiff alleges claims for negligence and other causes of action under the General Maritime law against Defendants for all damages recoverable under the General Maritime law. All claims and causes of action asserted by Plaintiff in this litigation are hereby supplemented with applicable Georgia state law causes of action where necessary

68. All at times material hereto, Defendants either owned, operated, managed, maintained and/or controlled the *Golden Ray.*

69. At all times material hereto, Defendants owed a duty to exercise reasonable care in the operation of the *Golden Ray*, including loading the vessel such that it would not capsize and wreck.

70. Defendants breached that duty in failing to guarantee the stability of the vessel prior to departure from the Port of Brunswick.

71. Defendants breached that duty in failing conduct a proper stability calculation of the vehicle cargo onboard prior to departure from the Port of Brunswick.

72. Plaintiff alleges that Defendants' acts and omissions, including any statutory or regulatory violations, were caused by the joint negligence and fault of Defendants and/or its agents,

11

servants and/or employees, causing the vessel to be loaded top-heavy and sent underway in such an unstable condition.

73. As a result of Defendants' negligence, the vessel became unstable and listed dramatically, forcing the State Pilot in a split second decision to run the *Golden Ray* into a sandbar to avoid a collision with inbound vessel *Emerald Ace* and prevent shipwreck in deeper waters.

74. Defendants' negligence caused environmental and economic harm to Glynn County. In addition, the reputation of five islands (Jekyll, St. Simons, Sea, Little St. Simons, and Blythe) have been severely and detrimentally impacted, as has its shrimp, crab and oyster and other industries.

75. As a direct and proximate result of Defendants' breach, Glynn County has suffered property damages and reductions in County revenues and taxes, as well as other damages, in an amount to be determined at trial.

## COUNT IV
## PUBLIC NUISANCE
**(AGAINST GL NV24 SHIPPING INC., HYUNDAI GLOVIS CO., G-MARINE SERVICE CO., LTD, AND NORTON LILLY)**

76. Glynn County incorporates Paragraphs 1 through 46 as through set forth fully herein.

77. Defendants have created a condition that is harmful to health and interferes with the comfortable enjoyment of life and property by discharging substantial quantities of fuel, oil and other hazardous substances into St. Simons Sound and surrounding rivers and marshlands, estuaries, and beaches.

78. That nuisance affects the real property and business owners that rely on the safe and healthy environment of the County.

79. The capsizing, salvage and subsequent oil spills and other discharges are conditions that would reasonably annoy and disturb an ordinary person, as shown by, for example, the closures of beaches, diminished tourism in the County, and the repeated need for the County to issue health, shoreline, swimming and fishing pollution advisories.

80. The wrongful acts of the Defendants have created a continuing public nuisance in the form of the contamination of the waters of the St. Simon Sound, as well as the rivers, estuaries, creeks, and marshes adjacent thereto, and the poisoning of fish and marine life.

81. This public nuisance created by the Defendants has caused and continues to cause damages to Glynn County, Georgia, and to the public at large.

82. This nuisance created and maintained by the Defendants has caused special damages to those who own property adjacent to polluted waters, to those who own property polluted by the Defendants' oil spills, to those who fish, or wish to fish in waters contaminated by the Defendants, and to those who otherwise have been specially damaged.

83. The seriousness and gravity of the harm outweighs the social utility of Defendants' conduct. There is no social utility associated with oil leakage and other discharges into the critical, coastal ecosystems.

84. The County suffered harm and injury to its properties, leases, revenues, and tax base that it did not consent to and that is different from the type of harm suffered by the general public.

85. The above acts and omissions also created a public nuisance to the County by interfering with the property rights of the County, the rights incidental those property rights, and the County's lien interests in other affected properties in the County.

86. The acts and omissions of Defendants have created a continuing public nuisance that threatens the health, well-being, and safety of the people of Glynn County and continues to damage the property, the commerce, and the natural resources of Glynn County.

87. As a direct and legal cause of the Defendants' wrongful acts and/or omissions set forth herein, the County has and will suffer economic harm, injury and losses.

88. Glynn County has the right and a public duty to seek the abatement of a public nuisance such as the one created, maintained, and continued by the Defendants, pursuant to O.C.G.A. § 41-2-2.

89. Glynn County is entitled to an injunction directing the abatement of Defendants' wrongful pollution and enjoining the Defendants from continuing and maintaining the nuisance that pollutes and has polluted the waters, soils, marine life of St. Simons Sound, its rivers, estuaries, and adjacent marshlands, the properties bordering upon the Sound, and the waters and marshlands adjacent thereto that are contaminated with oil from the shipwreck and subsequent leaks during the salvage operations.

90. Unless the Defendants are ordered to remove all or substantially all of the oil, it will continue to migrate into and within public waters and marshes and on to the lands of others, will continue to enter the food chain and be bioaccumulated and biomagnified in fish, birds, animals and humans.

91. Unless the Defendants are enjoined to remove the oil and other substances from the waters and marine life in St. Simons Sound, its estuaries, adjacent creeks, waters, and marshlands, such pollution will continue to migrate and continue to cause harm and threaten harm to the people, land, wildlife, and waters of Glynn County, Georgia.

92. Glynn County is entitled to an injunction to abate this nuisance by enjoining the Defendants to affirmatively remove all the oil and other hazardous substances that have been wrongfully discharged into the Sound.

93. Alternatively, Glynn County is entitled to abate this nuisance by enjoining the Defendants to pay contractors employed by Glynn County to remove the oil and other hazardous substances on or in the lands, waters and marshlands.

94. Glynn County is entitled to its expenses of litigation, including reasonable attorney fees.

95. Glynn County is entitled to exemplary damages sufficient to punish the Defendants and deter them from such further, similar wrongful conduct pursuant to O.C.G.A. § 51-12-5.1.

## COUNT V
## TRESPASS
## (AGAINST ALL DEFENDANTS)

96. The County incorporates Paragraphs 1 through 46 as if set forth herein.

97. Defendants' activities caused the vessel's capsizing and the discharging of fuel, oil and other hazardous fluids and materials into Glynn County property.

98. It was reasonably foreseeable that that loading a vessel in an unstable and top-heavy manner in violation of the 2008 Intact Stability Code would lead to a shipwreck and the resulting discharges of oil and other hazardous substances.

99. In causing the capsizing and resultant discharges, Defendants entered, invaded, wrongfully occupied, and intruded on the real properties of Glynn County without privilege, permission, invitation, or justification.

100. Defendants had a duty to use reasonable care not to enter, intrude on, or invade the County's real properties.

15

101. Defendants breached the duty they owed to Glynn County when they failed to exercise reasonable care in loading the *Golden Ray*, resulting in her capsizing.

102. Defendants knew or should have known that their conduct would foreseeably result in shipwreck and oil spills, causing damages to the real properties and economic interest of persons in the area affected by the spills.

103. As a direct and proximate result of Defendants' trespass, Glynn County has suffered legal injury and damages in an amount to be proven at trial.

## COUNT VI
## PRIVATE NUISANCE
### (AGAINST (AGAINST GL NV24 SHIPPING INC., HYUNDAI GLOVIS CO., G-MARINE SERVICE CO., LTD, AND NORTON LILLY)

104. Glynn County incorporates paragraphs 1 through 46 as if fully set forth herein.

105. The right of enjoyment of private property is an absolute right.

106. Defendants' actions and inactions caused, maintained, and/or permitted the discharges of oil, fuel and other hazardous substances alleged in this action by their negligence, intentional or otherwise, actionable acts, and/or omissions.

107. Defendants created the capsizing and subsequent discharges of oil, fuel and other hazardous substances which are harmful to both human health and the environment and interfered with the County's comfortable enjoyment of the real property in which it holds an interest.

108. Defendants were, at all relevant times, in sufficient control of the *Golden Ray* to properly load the vessel such that it would not have been unstable, top heavy and in imminent danger of capsizing.

109. Defendants knew or should have known that the capsizing and shipwreck would result in oil, fuel and other hazardous substances spilling into the surrounding environment, contaminating marine life in St. Simons Sound, its estuaries, adjacent creeks, waters, and

16

marshlands, with such pollution continuing to migrate and cause harm to the people, land, wildlife, and waters of Glynn County, Georgia.

110. The contamination described herein constitutes a nuisance.

111. Each Defendant is liable to the County in an amount to be determined at trial.

## COUNT VII
## DAMAGES NEGLIGENCE AND STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY
## (AGAINST T&T SALVAGE LLC)

112. Glynn County incorporates Paragraphs 1 through 46 as though fully set forth herein.

113. GL NV24 Shipping, Inc. hired T&T Salvage LLC for the large-section demolition and removal of the *Golden Ray* wreck.

114. Beginning in January 2020, T&T Salvage began its work and at all times relevant to this action, Defendant T&T Salvage had custody and control of the shipwrecked vessel and its contents.

115. T&T Salvage knew it was engaged in ultrahazardous activities, to wit: cutting up 656 foot-long capsized vessel containing 24 fuel tanks, thousands of gallons of unaccounted for fuel, and roughly 4,200 cars and trucks, which also contained gas and other flammable, hazardous, and toxic fluids.

116. T&T Salvage caused several fires, including those on January 20, 2020 and May 14, 2021, and several oil spills, including those on July 1 and July 30, 2021, into the St. Simons Sound and surrounding environment.

117. The measures Defendant T&T Salvage implemented to contain the oil and other flammable, hazardous and toxic substances repeatedly failed.

118. The County has suffered harm from the discharges of oil, fuel and other hazardous substances from these activities.

17

119. The additional injuries sustained by the County as a result of these repeated events were the direct and proximate result of T&T Salvage's failure to properly contain the oil and other flammable, hazardous and toxic substances of and in the ship.

120. The harm to the County is the kind of harm that would be reasonably anticipated as a result of the risks created by cutting up a partially submerged vessel containing flammable, hazardous, and toxic oil and other substances.

121. Defendant T&T Salvage was the cause or a substantial factor in causing the damages suffered by the County.

122. Defendant T&T Salvage is liable for its negligence in these activities, as well as strictly liable for these activities, and the County is entitled to recover damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Glynn County requests judgment against Defendants as follows:

A. For all recoverable compensatory, statutory, and other damages sustained by the County, including but not limited to natural resource damages, damages to real property, loss of government revenues, loss of profits or impaired earning capacity, damaged public services, damage assessments;

B. For costs;

C. For both pre-judgment and post-judgment interest on any amounts awarded;

D. For appropriate injunctive relief, including public injunctive relief requiring Defendants to repair property values impacted;

E. For actual damages as may be allowable under OPA, general maritime law and/or Georgia statutory law;

F. For payment of attorneys' fees and expert fees as may be allowable under applicable law, including but not limited to OPA;

G. For exemplary or punitive damages as allowed under OPA, general maritime law and/or Georgia statutory law;

H. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable as a matter of right.

Dated this 25th day of March, 2022.

                Respectfully submitted,

                **/s/ Brad Watkins**
                **Bradley J. Watkins, Ga. Bar No. 740299**
                **Brown, Readdick, Bumgartner, Carter,**
                **Strickland & Watkins, LLP**
                5 Glynn Avenue
                Brunswick, Georgia 31520
                Telephone: (912) 264-8544
                Fax: (912) 264-9667

                **Baron & Budd**
                **SCOTT SUMMY, TX Bar No. 19507500**
                **CELESTE A. EVANGELISTI, TX No. 00793706**
                3102 Oak Lawn Avenue #1100
                Dallas, Texas 75219
                Telephone: (214) 521-3605
                Facsimile: (214) 520-1181
                Attorneys for the Plaintiff
                *Pro Hac Vice Pending*

                **Cossich, Sumich, Parsiola & Taylor, LLC**
                **PHILIP F. COSSICH, JR., La. Bar No. 1788**
                **DARREN D. SUMICH, La. Bar No. 23321**
                **BRANDON J. TAYLOR, La. Bar No. 27662**
                **LOUISE R. CARO, Fla. Bar No. 633380**
                8397 Highway 23, Suite 100

Belle Chasse, Louisiana 70037
Telephone: (504) 394-9000
Facsimile: (504) 394-9110
Attorneys for Plaintiff
*Pro Hac Vice Pending*